Good morning, Your Honor. May it please the Court and Counsel, from what I've heard this morning, I think this should be a relatively, I think, simple issue as I see this. We have a case having to do with what I believe is the Pickering balancing test, and the judge in the district court failed to perform that test. That issue was raised at the time of the closing of the trial and at the time of the jury verdict, and he just failed to do that. As a result of his failure to balance Mr. Weast, the plaintiff in this case's rights to speak out and the county's rights to run an efficient agency, the Sheriff's Department, the other issues that have been presented by our brief, the issue of the balancing test, the qualified immunity issue, whether or not the county is in fact liable based on the evidence of any policy or regulation or rule that showed that somehow there was a situation set up that would violate Mr. Weast's constitutional rights, those all have a tendency to fall away because of the fact that the judge failed to do what I believe he needs to do as a matter of law. Is this really only about $15,000? It was like $20,002. All right. $20,002. $20,200? $20,002. That was the verdict. It was a $1 verdict against the individual defendants. So if this were a diversity case, you wouldn't even be here, right? Correct. Yeah. Yeah. And there were other issues involved in other cases. That's why this one had to continue up on appeal. There was a $4,500 punitive judgment award against each of the individuals, Sheriff John Shields and Captain Myron Smith. And going through the transcript, as the court will see, there really was no testimony whatsoever regarding the fact that Sheriff Shields transferred Sergeant Weast from his position as head of bomb squad. So what had happened is Captain Myron Smith, when he analyzed this, said, hey, this is really getting terrible. It's getting very disruptive. I'm going to transfer you. He transferred him, and then they sued the county, sued Sheriff Shields, and then sued Captain Smith also. Now Sheriff Shields, they do that on the basis that he is the policy in our brief. He is not. And Sergeant Weast took advantage of the fact that he... He's in the brief. He is not. But what was the evidence before the jury? The evidence before the jury was that Sergeant Weast, after he was transferred from the bomb squad to the other position, or removed from his position as the head of the bomb squad, is what he did is he took it up through the civil service rules and regulations and appealed for his transfer. And that went through the course of conduct through the civil service and found that it was upheld. There were no violations. I think it's important because if the county, in fact, does not have a policy or a rule that would violate Sergeant Weast's constitutional rights, then the county could not be liable. And they... Right. Question. Yes. Could Captain Smith discharge Weast without the approval of the sheriff? Yes. All right. And who is ultimately in charge of employment decisions in the sheriff's department? Ultimately would be the civil service commission. The civil service... Where does the record say that that is ultimately the civil service commission? Your Honor, I don't know if the record does say that. I think what it is is by... Well, no, I take that back. It's by testimony of Kurt Stanger, who was the safety officer, and by, I think, I want to say Robert Garrison, but I'm not sure, who worked for the Pierce County Prosecutor's Office, who did the follow-up investigation for the terms of following up the civil service complaint of Sergeant Weast. And so I guess by implication it talks about the fact that the sheriff was not the ultimate policymaker. Has somebody ever told a jury the civil service commission has the ultimate authority or is the policymaker? That's correct. So there was an instruction that nobody ever objected to, I guess. There was an instruction, I think, that was not given. That's correct. It should have been given, probably, in hindsight. Or requested. Right. But the jury was just told they should decide who the civil's – who the policymaker was based on the evidence. And the jury could certainly have concluded from the evidence, by inference, that the sheriff who knew about this was angry about it. They was told to apologize to the sheriff. And then he broke his appointment with the sheriff and didn't apologize, and then he was removed. Certainly the jury could have inferred from all the evidence that it was the sheriff who was behind the removal, couldn't they? They did. Yeah. If they had not, we wouldn't be here. They did infer that. But I think there was evidence presented based on what we talked about, the appeal to the civil service commission board, that he obviously wasn't the final decision-making policymaker. I believe that gets us again back to the fact that that's instruction number 15,  that did speak on an issue of public concern, and I think basically advised the jury that he was retaliated against. Well, he never reached that conclusion because what he did is he took – when the qualified immunity issue was appealed in front of this court and this court upheld his decision back when, he took that same information and said that's already been decided on. But that was decided by declaration of several witnesses. And at the time of trial, there were like four or five witnesses who testified as to the disruption caused by Sergeant Wiest within that department. Yeah. But, you see, your argument about the disruption caused by the sergeant really relates to his conduct, not to the speech we're talking about. I think it's both. Well, there's a problem about his – when he told – I mean, supposedly said they should send them into the bombs – wherever the bomb was, and the others weren't very happy about that idea and told them to give the uniform back, and the others didn't like the fact that he told them to give it back. That's all a reason that the county claims and may well have been the real reason he was removed. But the jury promptly had the right to decide whether that was the reason he was removed or whether he was removed because of the complaint he made about the sheriff. Now, it's not the complaint that he made about the sheriff that caused the disruption you're talking about. You're talking about the conduct he engaged in that caused the disruption, and the jury just didn't believe that that was the reason for the removal. They believed the reason for the removal was the First Amendment activity of criticizing the sheriff. I think that was part of it. I think the First Amendment claim in that letter, and then he was asked to apologize by Captain Smith and Lieutenant Masco, in which he chose not to do, created also – and Lieutenant Gibbs, who was his immediate supervisor, created a problem within that agency, and that's where I think Lieutenant Gibbs testified in the trial that that's when he realized that he believed that Sergeant Weiss was maybe losing his ability to control this division. So I agree with you, but I think there was a lot of elements there. And isn't that part of the reason why we have, as a matter of law, the balancing test set up in Pickering and Connick? And I guess that's what I was kind of surprised at, why we couldn't handle that. I mean, handle it and say that Sergeant Weiss wins, but you at least have to handle it, which they didn't do as a matter of law. Then all the rest of them fall into place. Did I answer your question or did I evade it? No, no, you didn't evade it. Did the judge, in determining that the free speech fell under the – whatever the doctrine – did the judge rely solely on the prior decision or did he make a judgment about it? Your Honor, I don't know exactly. I can't point right to the record, but we made the motion at the end of the plaintiff's case, and we asked him to do that. And then we made the motion again at the end of the trial. And if I can – I'll paraphrase the judge, who I do have the utmost respect for. He just basically said, you know, we'll handle that later because that's something we can always handle later because you can always take that after the fact. Well, then it became so far after the fact that we couldn't handle it. And what he said was, and what was argued to him in those motions, was that this is already a matter as decided by the Ninth Circuit, therefore it's the law of the case. Well, that's not – I don't think that's accurate because, number one, the Ninth Circuit did uphold his original decision, but in his original decision he said that if there was testimony from the individuals and from the agency and from the Sheriff's Department that talked about disruption, he would give that great deference. Well, then there was testimony and he did it. Can't you reasonably read that as saying that the testimony that we have about the disruption isn't, as I suggested before, testimony that his letter to the sheriff caused the disruption, but that there was no evidence that the speech itself caused disruption and therefore the prior decision was the correct result? And he said to the jury, but you can – it's up to you to decide whether he was fired because of the disruption or removed because of the disruptive conduct and because he was not managing the department properly. The jury had a chance to decide whether that disruption was the basis for the removal. The simple answer, I would say to your question, no, you can't take it like that because I think he has an obligation to do that weighing balance before we get as far as you want to go with that question. And he didn't do that because of the additional testimony. I mean, he just didn't – he just never approached it, never addressed it, never – just never answered it, although it was raised on those three occasions. So from what you're saying, I can understand what you're saying. I mean, if he would have ruled that, yes, the speech, number one, is an issue and was potentially an issue, and that is the speech of public concern, and then you balance that against the county's right to have an efficient bomb squad, and if he came out on the side of the free speech versus the side of the county, then we would be exactly, I think, where you're at. But he didn't – he never got that far. He said that's already been ruled on, therefore we don't have to rely on that now. That's what I think. And in looking at this, I'm just saying it's simple. We just need this answer. One way or the other, give us the answer. Then that would have eliminated the Instruction 15 if he came down the way we argued that he should come down. Thank you. The other issue that I – I think we've – I think there's five issues, and I think we've basically talked about four of them, and the last one is the punitive damage issue. And although the punitive damages are not great, $4,500, there's nowhere I can see in the evidence that was presented that they show any ill will or malice or any callous disregard or any of the elements needed to put down or assess punitive damages against the county. It's just not there. It's not in the transcript. It wasn't testified to. Remember, the plaintiff had four witnesses. They had Mr. Wiest himself and his wife, and then they had an economic expert, and then they had Sergeant Dave Dewey, who I think – An economic expert that could only get up to $20,000? Well, he made more money. He made more money after he was removed than he did before. So, actually, I thought the economic expert made $1, but that's – I've known him for a long time. So, anyway, I think that's why we're here. I think this case should be remanded, reversed, and dismissed. Reversed at the minimum, remanded. But, as you know, the standard review that we talked about is de novo, and you get to look at it all. You want to remand it for a new trial? No, we don't want it for a new trial. Well, if it's not a natural consequence of something you're asking for. It would be if you – I think the plaintiff might like that. Pardon me? I think the plaintiff might like that. If remanded a new trial? Yeah. Well, they might. They might not. How about if you settle it for the even $20,000 and drop the $2,000? Now, you're presupposing that we haven't tried to do all this before, and we have. I don't think it's a natural consequence, because I think it's a de novo review, and when you review the file and you review the transcript, I don't think you'll find any substantial evidence to warrant what has been found. And I think, as a matter of law, it falls. That's why I'm asking that it be reversed and dismissed. Any other questions? Okay. And I'd like you to note that, although I wanted to, I made no mention of I-94. Happy you're familiar with it. Good morning. May it please the Court, Counsel, I'm Hugh McGavock for Appellee Rod Weiss. And it may be a small verdict, but it's a keeper. We don't want to throw it back, but if we have to, let's go back and have a new trial on damages, because liability has been established. All of the elements have been met. Judge Reinhart, let's start with the questions that seem to be of interest to you with regard to the record here. Let's look at the record. Appellant seems to have an idea that they can view the evidence the way they want to view it and disregard what the jury got an opportunity to consider. But, of course, that's not standard here under CR 50. A de nobis review could reasonable minds have come up with a verdict substantiating this. The appellant did not adequately invite the court to do a pickering balance, and there's no evidence the court failed to do a pickering balance. If you look at pages of the transcript at ER 119 at 247.17, that was when plaintiff first arrested. The only motion to dismiss by defendant was based upon no causal relationship has been established between the allegation of whistleblowing and retaliation. That was the only basis stated on the record which Judge Burgess denied. That was the conclusion of plaintiff's case originally. When plaintiff rested at the conclusion of the evidence, that's where you'll find the more interesting part, and that is at ER 174. The only basis that the defendants used as a motion to dismiss was that there was no causal relationship. No, excuse me. A defense verdict was appropriate for qualified immunity for Sheriff John Shields only. Sheriff John Shields only. And that's at page 473. Excuse me, page 463 of the transcript, ER 174. The next page, the court says, okay, I've heard you, Mr. Miller. The issue of public concern has been addressed, and the Ninth Circuit panel found that. I'm not going to change that. And they did the Pickering test, and that's it. There's nothing else to do. Mr. Miller and the defendants did not raise the Pickering balancing test on the basis of disruption. The court mentioned it in reference to this court's memorandum of opinion from May 2002. That was the only reference to the Pickering balancing test which was made in this transcript in the court below, and it was not even referred to in the, I believe, in the defendant's motion post-trial, that the Pickering balancing test had failed. I could be wrong on that. Well, let's assume it was properly raised. What's your analysis of the Pickering balance test in this case? I believe it's consistent with Judge Reinhart's questions. If there was disruption, it was based on alleged misconduct and poor performance, not upon disruption within the unit or within the sheriff's department. The disruption also must not be something that's caused by the decision-maker, the policy-maker, the sheriff here. The disruption came when Sheriff Shields was angered by what he considered offensive comments in the July 6th memo, and he took personally and demanded that there be an apology obtained from Wiest and sent his chain of command, his number two captain, Smith, and Lieutenant Masco and Lieutenant Gibbs, to get this with the threat that if you do not apologize, there will be consequences you do not like. You are ordered to be at the sheriff's office on July 25th at 11 p.m., an appointment that couldn't have been made without the sheriff. So the disruption was all caused by everybody getting in a tizzy because the emperor, who had no clothes, was demanding someone apologize for telling him he had no clothes. It was not based on anything else. It wasn't based on the bomb squad or on the bomb suit issue because the bomb suit issue came up July 27th, the day after Wiest filed his written whistleblower complaint with the county on July 26th. July 25th, Wiest called the army captain because he had concerns they had an illegal suit obtained illegally. July 27th, the captain called Wiest back and left a message. July 29th, they talked, and Wiest says, I think we have an illegal suit. Smith testified he decided to remove Wiest on the 25th, which is a mind crime the jury didn't believe. It sounded like a convenient reason to jump ahead of the July 26th whistleblower complaint. So disruption was not an issue, and even if it had been properly invited, it would not have been a basis to take this case from the jury as a matter of law. And the evidence is much more substantial on the record presented to this jury and this judge than your predecessor panel had to consider in finding that there was no disruption, and if it was, it was caused by the policymaker, the sheriff. Was the final authority over employment decisions with the sheriff or with the civil service commission? It was the sheriff, and looking under Washington case law and Pierce County Code and the revised code of Washington, it's clear that the sheriff had authority. And there was no civil service commission hearing here. Counsel has misstated the record. The only place where there was any reference to exhaustion of administrative remedies was in Wiest's testimony. At ER 86, page 121, and there's five lines. Did you take any action as a result of the removal from the bomb unit? Answer, yes. I filed grievances through the union, which went up through the various levels. It went through the last level of the department, sheriff's department, denied all the way up through. The next level was to file it with the county exec. It disappeared, never to be seen again, and I never got resolution on it. The civil service commission never got involved, even though there is a civil service statute for sheriff's offices in Washington. Who is the exec to whom they are referring? It's referred to the county exec. The county executive is the chief elected official in the county, Pierce County. Judge Nelson asked you who had the final authority, and you rattled off a lot of things like the code, the rules, something. What is it specifically that makes you say the sheriff has the final authority? There's about four things, Your Honor. There's RCW 36.28.010, which makes the sheriff of each county the chief executive officer of the peace for preserving and protecting public safety, health, and welfare. And then Pierce County Code has three provisions that are directly on point and are cited in the briefs. They're all under Pierce County Code 2.06.010. At A6, the Pierce County executive has final policymaking authority and can appoint. At A4, the sheriff serves at the pleasure of the executive. At sub E, the sheriff, as the CEO director, has authority over the county's specialty units, including the bomb squad. Look at what happened here. Wiest complained about the sheriff. The sheriff got upset, set in action a chain of events, which caused his removal, not transfer. There wasn't transfer. He went back to he did the job he was always doing. He didn't go to civil service because he didn't have to. He could have. There's been no allegation of failure to exhaust. That's an optional remedy. But civil service commissions do not have authority to entertain First Amendment whistleblower causes of action. They look at did the sheriff have discretion to remove this person. Yes, he did have discretion to remove him. Was there a CEO over the sheriff who had ultimate decision-making authority is the question. That was the county executive. I think it might have been Doug Sutherland at the time, if that matters. As the uncontroverted testimony of Wiest was, after he had exhausted the union grievance process, which went up through the sheriff, with the sheriff being the final decision-maker there, he filed, he sought review from the Pierce County executive, and it was never responded to. Nothing ever happened. So it was ratified by the county executive, in effect pocket-vetoed by the county executive, who, as the highest-ranking person in the county, had ultimate authority, thus making county liability appropriate. And there's plenty of cases from the Ninth Circuit finding sheriffs as policymakers. The Davis v. Mason County case was a case from this state back in 1991. I have no problem with the sheriff. The question is, did he have the final decision-making authority, or did the county? He had the final actual decision-making authority. There was a possibility for review by the county executive as the highest elected official in the county, which Wiest sought and did not receive any relief from. Okay. Thank you. And that's in the second I cited. One of the things to remember here is there was a lot of evidence the jury did not hear. They did not hear from Sheriff Shields, who, for reasons unknown, did not testify, or from Lieutenant Masco, who did not testify, who was a key intermediary, or from several other people. Another consideration about the authority of the sheriff is in Attachment T to the excerpt of records. That's the Stinger investigation he did of the formal written whistleblower complaint, which came out three months after Wiest had been removed. So it was obviously not a consideration in the decision-maker's mind to find that there was no whistleblower conduct, which the jury subsequently disagreed with. And one of his recommendations was that the sheriff may consider disbanding the unit, otherwise they need to get in compliance with the federal requirements of equipment and training for their people. Judge Thomas, you asked about a new trial. I don't think a new trial is merited here. Your opponent indicated he wanted a remand, and so I didn't understand the scope of that. If you have a faulty jury instruction, that would be one thing. But I don't know. I took his comments, I think. Okay. This is presented as a question of law. I understand. Very good. If there was a remand, it should be for new trial. Yes. On damages only. Yeah. There are several other reasons why the Rule 50 motion, which is the ostensible basis for this appeal, are still founded. There was not an affirmative defense raised in the answer to the complaint. There was no reference to an affirmative defense for county liability or pickering, balancing in the pretrial order. The only basis stated were absolute and qualified immunity for the individual defendants, nothing about the county. There was no exception to the county liability instruction given, either by either side, which raises an interesting point and ties into a new trial potentiality. If defendants are allowed to sandbag a county liability issue and raise it post-trial for the first time, and the jury awards damages on this as they did, the damages have a high potentiality of being distributed differently. What do I mean? Shields and Smith each had $1 of liability and each had $4,500 of punitive damage liability. But the county was dinged, if you will, for $11,000, which if the county had been excluded on a proper motion, say instruction 12 had not been given because the county objected and said there's no basis in law or fact, then maybe the jury would have awarded damages differently and apportioned $5,501 to each of the individual defendants, as opposed to a straight $11,000 to the county and one. So it has great prejudice if the court finds it, which brings me back to other deficiencies in this CR 50 proceeding. Defendants didn't make a CR 50 motion with regard to county liability at the time plaintiff rested initially or secondarily. They did not specify on the record during the trial a basis to have a CR 50 motion. They did not set forth the specificity of law and fact required by Federal Rule of Civil Procedure 50A2. And then they made basically a brand-new motion post-trial, which is not a renewed motion under 50B. And all they stated there at 208 was the county is not liable because there's no evidence of policy or custom, nothing about the laws, nothing about the facts, and I don't think anything else about pickering. Finally, they failed to satisfy the de novo burden, such that reasonable minds could not differ taking all inferences in favor of the non-movement plaintiff who successfully asserted important constitutional rights, which were vindicated by this jury. Since you've run out of questions, I'd better sit down pretty soon. Okay. Thank you. Okay. Last point is I think that it would be appropriate for this panel to fully affirm and to reverse or, excuse me, to remand with directions to the trial court to award attorney's fees, which it stayed because defendants had filed a premature motion prior to the filing of a post-trial petition for prevailing party attorney's fees. There could have been post-judgment interest accruing on attorney's fees, and now the plaintiff is in the position of going back. It's now more than a year, about a year and a half since, over a year and a half since the verdict, and getting a de novo attorney fee petition heard by the court, which could foster piecemeal litigation. If either side doesn't like that, do we come back here in another two years? This case is already over eight years old. These events happened in July 1996. I initially appealed that. It turned out it was not an appealable order as a final order, so I withdrew that appeal. But I would appreciate the court perhaps nipping what could be a dangerous and constitutionally insulting practice to develop of deferring awards of attorney's fees until after an appellate court has made sure the court did the right thing. Is that a ground, you know, of constitutionally insulting? I think so. It would be a good one to establish it, but it's not, Your Honor. Okay. Thank you very much. Just briefly, in the supplemental record on Exhibit U, it talks about the executive director of the county and his appointments in his departments, and the sheriff is appointed under the executive director, who was at that time, I think, was Doug Sutherland, as counsel said. The other issue that counsel mentioned in the second motion to dismiss after the trial, the judge said, well, the Ninth Circuit's already ruled on that, so we're going to leave it at that. Well, you know, I'll concede I'm not the brightest guy in the world, but when a judge tells me, counsel, we've already ruled on that, I'm not going to rule on it, we're not going to raise other issues, it's done. It's a done deal. And that's the balancing test that we're talking about. He just chose not to do that. I defy counsel to find in the record where Sheriff Shields was ever angry. Those words carry a lot of meaning and they carry a lot of impact, but there's no testimony about that. The only people that testified were Captain Smith and Lieutenant Masco. And Sheriff Shields, the testimony was, if I remember correctly, he asked us, did you read that letter and did you think that was appropriate? There was no anger, there was no nothing. Weiss got fired by Captain Smith and he appealed it up through the course of the chain of command. Now, he wanted to do it. It didn't go anywhere. He brought this lawsuit. I believe he should have lost this lawsuit. I misspoke when I said remand. I meant reverse. I know you understand that. So thank you, unless there's any questions. Thank you, counsel. Thank you both very much. The case just argued is admitted. The next case for argument is Thornton v. Hill.
judges: D Nelson, Reinhardt, Thomas